MILBANK, TWEED, HADLEY & McCLOY LLP
Gregory Evans (State Bar No. 147623)
Chris L. Holm (*Pro Hac Vice*)
601 South Figueroa Street, 30th Floor
Los Angeles, California 90017
Telephone: (213) 892-4000
Facsimile: (213) 629-5063
gevans@milbank.com
cholm@milbank.com

MILBANK, TWEED, HADLEY & McCLOY LLP
Christopher E. Chalsen (*Pro Hac Vice*)
Michael M. Murray (*Pro Hac Vice*)
Lawrence T. Kass (*Pro Hac Vice*)
Milbank, Tweed, Hadley & McCloy LLP
1 Chase Manhattan Plaza
New York, NY 10005
Telephone: (212) 530-5000
Facsimile: (212) 530-5219
cchalsen@milbank.com
mmurray@milbank.com
lkass@milbank.com

Attorneys for Plaintiffs,
FUJITSU LIMITED and
FUJITSU MICROELECTRONICS AMERICA, INC.

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# OAKLAND DIVISION

| | |
|---|---|
| FUJITSU LIMITED, a Japanese corporation, and FUJITSU MICROELECTRONICS AMERICA, INC., a California corporation,<br><br>Plaintiffs,<br><br>v.<br><br>NANYA TECHNOLOGY CORP., a Taiwanese corporation, and NANYA TECHNOLOGY CORP. U.S.A., a California corporation,<br><br>Defendants. | CASE NO. 4:06-cv-06613 (CW)<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR INSUFFICIENT SERVICE OF PROCESS OR ALTERNATIVELY TO QUASH SERVICE OF PROCESS**<br><br>Date:     February 2, 2007<br>Time:     10:00 A.M.<br>Location: Courtroom 2, 4th Floor |

# TABLE OF CONTENTS

I. Introduction ........................................................................................................... 1

II. Statement of Facts .................................................................................................. 2

III. Applicable Laws ..................................................................................................... 6

    A. Fed. R. Civ. P. 4(h) and 4(f)(2) Govern Service of Process On Nanya ................. 6

    B. Service by Hand on a Taiwanese Defendant or Its Employee Is Sufficient to Commence Litigation in the United States ...................................................... 7

    C. Service By Mail Dispatched by the Clerk on a Taiwanese Defendant Is Also Sufficient to Commence Litigation in the United States .............................. 8

    D. Allegations Are Construed In Favor Of Plaintiff In A Motion To Dismiss For Inadequate Service Under 12(b), And A Return Of Service Establishes A *Prima Facie* Case Of Sufficiency Of Service ................................................... 9

IV. Analysis .................................................................................................................. 9

    A. Fujitsu Effected Proper Service Of Process By Hand ........................................... 9

        1. Fujitsu Complied with the State Department's Guidance ............................. 9

        2. Nanya's Arguments Are Meritless ............................................................... 10

    B. Fujitsu Also Effected Proper Service By International Mail ................................ 13

    C. In The Event The Court Finds That Nanya Has Not Yet Been Properly Served, It Should Quash Service Rather Than Dismiss The Complaint ............... 14

    D. Nanya Does Not Challenge Personal Jurisdiction ............................................... 14

V. Nanya USA is in Default ...................................................................................... 14

VI. Conclusion ........................................................................................................... 15

# TABLE OF AUTHORITIES

## CASES

*Alcaraz Martinez v. White*,
   No. C 06-01595 CRB, 2006 WL 1530111 (N.D. Cal. June 2, 2006) ................................. 11

*Bally Export Corp. v. Balicar, Ltd.*,
   804 F.2d 398 (7th Cir. 1986) ........................................................................................... 9

*Brockmeyer v. May*,
   383 F.3d 798 (9th Cir. 2004) ......................................................................................... 11

*Cosmetech Int'l, LLC v. Der Kwei Enter. and Co., Ltd.*,
   943 F.Supp. 311 (S.D.N.Y. 1996) .............................................................................. 7, 11

*Daugherty v. Popick*,
   89 F.R.D. 642 (S.D.N.Y. 1981) ...................................................................................... 15

*Emery v. Wood Industries, Inc.*,
   No. Civ. 98-480-M, 2001 WL 951579 (D.N.H. Aug. 20, 2001) ................................. 8, 13

*Hong-Ming Lu v. Primax Wheel Corp.*,
   No. C 04-4170 JSW, 2005 WL 807048 (N.D. Cal Apr. 7, 2005) ..................... 8, 9, 10, 11

*Power Integrations, Inc. v. System General Corp.*,
   No. C 04-02581 JSW, 2004 WL 2806168 (N.D. Cal. Dec. 7, 2004) ................... 7, 8, 9, 13

*Quach v. Cross*,
   No. CV 03-09627 GAF, 2004 WL 2862285 (C.D. Cal. Dec. 3, 2004) ............................. 9

*Rio Properties, Inc. v. Rio Int'l Interlink*,
   284 F.3d 1007 (9th Cir. 2002). ........................................................................................ 7

*SVC-Napa, L.P. v. Strategy Resort Financing, Inc.*,
   No. C 06-03561 SI, 2006 WL 2374718 (N.D. Cal. Aug. 16, 2006) ............................... 11

*Taylor Made Golf Co., Inc. v. Carsten Sports, Ltd.*,
   175 F.R.D. 658 (S.D. Cal. 1997) ................................................................................ 7, 11

*Trueposition, Inc. v. Sunon, Inc.*,
   No. C 05-3023, 2006 WL 1686635 (E.D. Pa. June 14, 2006) ................................ 6, 8, 13

*U.S. v. Ziegler Bolt and Parts Co.*,
   111 F.3d 878 (Fed. Cir. 1997) ......................................................................................... 9

## STATUTES

Taiwan Code of Civil Procedure Article 123 ........................................................................ 11, 12
Taiwan Code of Civil Procedure Article 124 .............................................................................. 8
Taiwan Code of Civil Procedure Article 131 ............................................................... 7, 10, 11, 12
Taiwan Code of Civil Procedure Article 137 ....................................................................... 7, 10
Taiwan Code of Civil Procedure Article 153-1 ......................................................................... 12

**RULES**

Fed. R. Civ. P. Rule 12(b)(2) .................................................................................. 1, 15
Fed. R. Civ. P. Rule 12(b)(5) ......................................................................................... 1
Fed. R. Civ. P. Rule 12(b) ............................................................................................ 15
Fed. R. Civ. P. Rule 4(f) ................................................................................................ 6
Fed. R. Civ. P. Rule 4(f)(1) ........................................................................................ 6, 7
Fed. R. Civ. P. Rule 4(f)(2) ........................................................................................... 6
Fed. R. Civ. P. Rule 4(f)(2)(A) ............................................................................... 10, 11
Fed. R. Civ. P. Rule 4(f)(2)(C)(ii) .......................................................................... passim
Fed. R. Civ. P. Rule 4(f)(3) ........................................................................................... 7
Fed. R. Civ. P. Rule 4(h) ............................................................................................... 6
Fed. R. Civ. P. Rule 4(h)(2) .......................................................................................... 6

Plaintiffs Fujitsu Limited and Fujitsu Microelectronics America, Inc., (collectively "Fujitsu") hereby oppose the motion of Defendant Nanya Technology Corp. ("Nanya") to dismiss this suit under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(5) based on alleged insufficient service and lack of personal jurisdiction or alternatively to quash service of process ("Motion"). The Court should deny Nanya's Motion because Fujitsu's service by hand was proper. Moreover, the Motion is moot because Fujitsu thereafter again properly served Nanya -- this time by international mail under Fed. R. Civ. P. 4(f)(2)(C)(ii) -- in a "belt and suspenders" approach.

This opposition is supported by the Declaration of Chris L. Holm and attached Exhibits, the Declaration of Nien-Huai Hsu, the Declaration of Victor S.C. Lee and attached Exhibits, the papers and pleadings already filed with the Court, and any other evidence or argument that may be presented through the hearing of the motion.

## I. INTRODUCTION

Fujitsu and Nanya have been negotiating patent license issues for more than five years. Those negotiations began in 1999 when Fujitsu approached Nanya to discuss the terms of a license regarding Nanya's unauthorized use of substantial Fujitsu patented technology relating to semiconductor devices. The parties met numerous times, but were unable to reach agreement. In August 2005, Fujitsu brought an action for patent infringement against Nanya in Japan, asserting a single patent. Since then, the parties have been engaged in a series of mediations supervised by the Japanese court. The parties have consented to conduct settlement discussions on a world-wide basis.

At a critical phase in the on-going negotiations, and in a clear attempt to gain a tactical advantage in the Japanese mediations, Nanya filed a patent infringement action in Guam against Fujitsu on September 13, 2006, and handed the complaint to Fujitsu (without formally serving) at a negotiation meeting the very next day in Tokyo. As described more fully in

Plaintiffs' Opposition to Defendants' Motion to Dismiss, Transfer or Stay Case, submitted herewith, Nanya had absolutely no basis to file in Guam, especially because two out of four of the parties reside in California (the others residing overseas) and the Fujitsu defendants have no contacts in Guam. Fujitsu therefore moved to dismiss the Guam action for lack of personal jurisdiction and/or improper venue, or alternatively for transfer to this Court as the more convenient forum.[1]

In the instant Motion, Nanya alleges that Fujitsu initiated the instant suit as a "retaliatory action" (Motion at 2, line 14) "[i]n an overt attempt to divert venue" (*Id.* at 3, line 7). It is inescapable however that (a) Fujitsu filed its Japanese action first, (b) the Japanese court began supervising negotiations, and (c) when the court began encouraging a world-wide settlement, Nanya dropped a Guam complaint on Fujitsu at a negotiation meeting in Tokyo. It is also inescapable that California is the only forum with strong ties to the parties and the subject matter of the action. These issues are addressed in Plaintiffs' Opposition to Defendants' Motion to Dismiss, Transfer or Stay Case.

The issue for this Motion is cut and dry: Did Fujitsu properly effect service on Nanya? As discussed further below, the answer is yes, and yes. Fujitsu properly effectuated service by hand *before* Nanya filed its Motion, and then in an abundance of caution, Fujitsu *again* properly effectuated service -- this time by obtaining the Clerk of the Court's assistance to serve by international mail under Fed. R. Civ. P. 4(f)(2)(C)(ii). Nanya's Motion therefore should be denied. Indeed, having been properly served a second time, Nanya should have withdrawn its Motion.

II.     **STATEMENT OF FACTS**

On September 13, 2006, Nanya filed its Guam complaint against Fujitsu Limited and Fujitsu Microelectronics America, Inc. (FMA), a California corporation, alleging patent

---

[1] Fujitsu Limited has also moved to dismiss in Guam due to insufficient process and service of process.

infringement and antitrust violations, and seeking declaratory judgment with respect to Fujitsu's patents. (Declaration of Chris L. Holm, January 12, 2007 ("Holm Decl.") ¶ 3; *id.* Ex. A). On October 24, 2006, Fujitsu filed its complaint in this Court alleging patent infringement against Nanya and Nanya Technology Corp. U.S.A. ("Nanya U.S.A."), also a California corporation. (*Id.* ¶ 4; *id.* Ex. B.).

On October 31, 2006, while the parties were in the midst of negotiating mutual waivers of service for the foreign entities in the Guam and California actions, Nanya purportedly served its Guam complaint on FMA at its offices in Sunnyvale, California.[2] (*Id.* ¶ 5; *id.* Ex. C). On November 1, 2006, Fujitsu served its California complaint on Nanya U.S.A. at its offices in Santa Clara, California. (*Id.* ¶ 6; *id.* Ex. D). Fujitsu promptly filed a Return of service for Nanya U.S.A., the sufficiency of which Nanya U.S.A. has not challenged. (*Id.*).

On November 3, 2006, Mr. Nien-Huai Hsu, who is one of Fujitsu's Taiwan counsel, effected service on Nanya by hand. (*Id.* ¶ 7; *id.* Ex. E). Mr. Hsu is a Taiwan attorney associated with Tsai, Lee & Chen, 12th Floor, 148 Songjaing Rd., Taipei 104 Taiwan. (Declaration of Nien-Huai Hsu, January 11, 2007 ("Hsu Decl.") ¶ 1). To effect service, Mr. Hsu entered Nanya's office at Hwa-Ya Technology Park, 669, Fu Hsing 3rd Rd., Kueishan Taoyuan, Taiwan. (*Id.* ¶ 3). Mr. Hsu took a copy of the Civil Summons, Complaint with Exhibits, Civil Cover Sheet, Case Management Order With Additional Standing Orders, and Certificate Of Interested Entities Or Persons with him when he entered the offices of Nanya. (*Id.* ¶ 4). Mr. Hsu approached the receptionist who was present at the office of Nanya and asked for the manager of the Nanya legal department, informing the receptionist that he had legal papers for Nanya. (*Id.* ¶ 5). The receptionist informed Mr. Hsu that it was not possible to see the manager of Nanya's legal department. (*Id.* ¶ 6). The receptionist consented to receive the legal documents and Mr. Hsu handed the Civil Summons, Complaint with Exhibits, Civil Cover Sheet, Case Management

---

[2] *See supra* note 1.

| | |
|---|---|
| 1 | Order With Additional Standing Orders, and Certificate Of Interested Entities Or Persons to her. |
| 2 | (*Id.* ¶ 7). The receptionist agreed to forward the legal documents to the legal department of |
| 3 | Nanya. (*Id.* ¶ 7). Based on the receptionist's location in the reception area of Nanya, her consent |
| 4 | to receive the legal documents, her statement that she would forward the legal documents to the |
| 5 | Nanya legal department, and Mr. Hsu's confidence that she was a person of suitable age and |
| 6 | discretion, Mr. Hsu left the legal documents with her. (*Id.* ¶ 8). |
| 7 | After perfecting service on Nanya, Mr. Hsu traveled to the Taipei office of the |
| 8 | American Institute in Taiwan, where on November 8, 2006 he executed a return of service before |
| 9 | Jocelyn M. Sindelar, special Notary (PL96-8) of the Consular Section of the American Institute |
| 10 | in Taiwan. (Holm Decl. ¶ 7; *id.* Ex. E). In that Return of Service, Mr. Hsu indicated that service |
| 11 | of the Summons and Complaint was made on November 3, 2006. (*Id.*) He also checked the box |
| 12 | to indicate that the documents were served personally upon the Defendant, and he included a |
| 13 | hand-written statement that the documents were given to receipt of Nanya Technology Corp. |
| 14 | (*Id.*) |
| 15 | Following Nanya's November 22 motion to dismiss, on December 29, 2006, Mr. |
| 16 | Hsu executed a revised Return of Service, which included additional details but did not change |
| 17 | any of the information contained in the Return of Service that was executed on November 8, |
| 18 | 2006. In particular, the revised Return of Service included a more detailed explanation of how |
| 19 | process was effected on Nanya, and to whom process was delivered at Nanya. (Holm Decl. ¶ 8; |
| 20 | *id.* Ex. F). In that revised Return of Service, Mr. Hsu stated: |

> On November 3, 2006, copies of the Summons, Complaint and associated documents of the U.S. District Court, Northern District of California, case C06 06613, were identified as legal documents and were given by hand to a receptionist of Nanya Technology Corp., located at Hwa-Ya technology park 669, Fu Hsing 3rd Rd. Kueishan, Taoyuan, Taiwan, Rep. of China. The undersigned first asked for the manager of the legal department, before giving the documents to the receptionist, but was informed by the receptionist that it was not possible to see the manager of the legal department. The receptionist consented to receive the documents, and she agreed to forward the documents to the legal department of Nanya Tech. Corp.

Fujitsu filed the revised Return of Service with the Court on January 9, 2007. (Holm Decl. ¶ 8; *id.* Ex. F, Dkt. No. 47).

Also following Nanya's November 22 motion to dismiss, in an abundance of caution, Fujitsu requested that this Court effectuate service of the summons and complaint by mail under Fed. R. Civ. P. 4(f)(2)(C)(ii) to Nanya, dispatched by a clerk of this Court as a secondary form of service on Nanya. (Holm Decl. ¶ 9; *id.* Ex. G). To effect that service by mail, Fujitsu prepared and delivered a package containing copies of the Civil Summons, in English and Chinese; Complaint with Exhibits, in English and Chinese; Civil Cover Sheet, in English and Chinese; Case Management Order With Additional Standing Orders, in English and Chinese; and Certificate Of Interested Entities Or Persons, in English and Chinese to Ms. Clara Pierce. (*Id.*) Ms. Pierce is a Deputy Clerk for the United States District Court Northern District of California. (*Id.*) Ms. Pierce confirmed:

> (a) the contents of the package as described above;
> (b) that the package was addressed to NANYA TECHNOLOGY CORP., Hwa-Ya Technology Park, 669, Fu Hsing 3rd Rd., Kueishan, Taoyuan 333, Taiwan;
> (c) that a customs form, return receipt postcard, and postage were affixed to the package; and
> (d) that the package was deposited with the United States Postal Service, Global Express Mail (ED 699 499 342 US).

(*Id.*) After observing all of the above, Ms. Pierce executed a declaration as to what she observed. (*Id.*) The declaration of Ms. Pierce was then filed with the court. (Holm Decl. ¶ 9). The Global Express Mail package, bearing label number (ED 699 499 342 US) was delivered in Taiwan on December 5, 2006, and a Return of Service to that effect was filed with the Court on January 9, 2007. (*Id.* ¶ 10; *id.* Ex. H, Dkt. No. 48).

On December 18, 2006, Fujitsu also initiated service of process on Nanya by Letter Rogatory by filing with the Court an Application for Issuance of Letter of Request (Letter

Rogatory). (Holm Decl. ¶ 11; *id.* Ex. I). The Court signed that request on December 27, 2006. (*Id.* ¶ 12; *id.* Ex. J).

III. APPLICABLE LAWS

    A.    **Fed. R. Civ. P. 4(h) and 4(f)(2) Govern Service of Process On Nanya**

Nanya is a foreign corporate defendant, and as such Federal Rules of Civil Procedure 4(h) and 4(f) govern service. Rule 4(h)(2) provides that a foreign corporation may be served "in a place not within any judicial district of the United States in any manner prescribed for individuals by [Rule 4(f)] ...." Fed. R. Civ. P. 4(h)(2).[3] Rule 4(f) includes three paragraphs; paragraph 2 applies here; paragraphs 1 and 3 do not.

> **[Rule 4(f)] Service Upon Individuals in a Foreign Country**. Unless otherwise provided by federal law, service upon an individual from whom a waiver has not been obtained and filed ... may be effected in a place not within any judicial district of the United States:
>
> (1) by any internationally agreed means reasonably calculated to give notice, such as those means authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents; or
>
> (2) if there is no internationally agreed means of service or the applicable international agreement allows other means of service, provided that service is reasonably calculated to give notice:
>
> * * *; or
>
> (3) by other means not prohibited by international agreement as may be directed by the court.

Fed. R. Civ. P. 4(f).

Rule 4(f)(2) applies here because there is no internationally agreed means of service between Taiwan and the United States. Fed. R. Civ. P. 4(f)(2); *Trueposition, Inc. v. Sunon, Inc.*, No. C 05-3023, 2006 WL 1686635, at *4 (E.D. Pa. June 14, 2006). Rule 4(f)(1) is not applicable because there are no internationally agreed means for service between the United

---

[3] Rule 4(h)(2) includes an inapplicable exception for "personal delivery as provided in [Rule 4] paragraph (2)(C)(i)." That exception is inapplicable because service by hand in Taiwan is more than just not "prohibited" (see Rule 4(f)(2)(C)(i)), it is in fact affirmatively "prescribed" (see Rule 4(f)(2)(A)). Because service by hand is affirmatively "prescribed by the law" of Taiwan, Rule 4(2)(A) applies, and neither Rule 4(f)(2)(C)(i) nor the exception in Rule 4(h)(2) apply.

States and Taiwan, such as the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents. Fed. R. Civ. P. 4(f)(1); *Power Integrations, Inc. v. System General Corp.*, No. C 04-02581 JSW, 2004 WL 2806168, at *1 n.2 (N.D. Cal. Dec. 7, 2004). Rule 4(f)(3) is also inapplicable because the Court has not directed alternative means of service. Fed. R. Civ. P. 4(f)(3); *Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014 (9th Cir. 2002).

### B. Service by Hand on a Taiwanese Defendant or Its Employee Is Sufficient to Commence Litigation in the United States

The United States Department of State, which provides guidance on Judicial Assistance in Taiwan, states that "[s]ervice of process in Taiwan can be effected ... by agent, generally a local attorney ... ." (Holm Decl. ¶ 13; *id.* Ex. K). This is consistent with the Taiwan Code of Civil Procedure, which expressly authorizes service directly upon a manager of a business. Article 131 specifically provides that "[i]n an action regarding a business, service may be effected upon the manager." (Declaration of Victor S.C. Lee, January 11, 2007 ("Lee Decl.") ¶ 8; *id.* Ex. A). Accordingly, courts in California and elsewhere have asserted jurisdiction over businesses in Taiwan based on personal service upon a manager. *Taylor Made Golf Co., Inc. v. Carsten Sports, Ltd.*, 175 F.R.D. 658, 661 (S.D. Cal. 1997); *see also Cosmetech Int'l, LLC v. Der Kwei Enter. and Co., Ltd.*, 943 F.Supp. 311 (S.D.N.Y. 1996).

The Taiwan Code also expressly authorizes service on an employee when the manager is unavailable. Specifically, Article 137 of the Taiwan Code of Civil Procedure provides that "[w]hen the person to be served cannot be found in his/her domicile/residence, **office, or place of business**, service may be effectuated by leaving the paper with his/her housemate or **employee of suitable age and discretion**." (Lee Decl. ¶ 9; *id.* Ex. A (emphasis added)). This Court has relied on Article 137 of the Taiwan Code of Civil Procedure to find valid service of process in Taiwan on an individual defendant where the Summons and Complaint were left with the defendant's son at the defendant's residence address. *Hong-Ming*

*Lu v. Primax Wheel Corp.*, No. C 04-4170 JSW, 2005 WL 807048, at *4 (N.D. Cal Apr. 7, 2005).

Accordingly, service upon a Taiwanese corporation by hand delivery is effective to commence litigation in the United States.

### C. Service By Mail Dispatched by the Clerk on a Taiwanese Defendant Is Also Sufficient to Commence Litigation in the United States

The State Department's guidance on Judicial Assistance in Taiwan also provides that "[s]ervice of process in Taiwan can be effected by international registered mail/return receipt requested." (Holm Decl. ¶ 13; *id.* Ex. K). This is consistent with Rule 4(f)(2)(C)(ii), which permits service by "any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the party to be served," so long as it is not expressly prohibited by the law of the foreign country. Fed. R. Civ. P. 4(f)(2)(C)(ii); *Trueposition, Inc.*, 2006 WL 1686635, at *4.

The Taiwan Code does not prohibit service by mail dispatched by a court clerk; in fact Article 124 of the Taiwan Code of Civil Procedure expressly authorizes it. (Lee Decl. ¶ 10; *id.* Ex. A ("Service of process shall be effectuated by ... post office delegated by the court clerk. In cases of service effectuated by a post office, the relevant postman shall be deemed the person who effects service.")). This Court and a number of other courts have therefore concluded that Taiwan does not prohibit service of process by mail pursuant to Rule 4(f)(2)(C)(ii). *Power Integrations, Inc.*, 2004 WL 2806168, at *3; *Trueposition, Inc.*, 2006 WL 1686635, at *5; *Emery v. Wood Industries, Inc.*, No. Civ. 98-480-M, 2001 WL 951579, at *2 (D.N.H. Aug. 20, 2001).

Thus, service upon a Taiwanese corporation by international mail under Rule 4(f)(2)(C)(ii) is effective to commence litigation in the United States.

### D. Allegations Are Construed In Favor Of Plaintiff In A Motion To Dismiss For Inadequate Service Under 12(b), And A Return Of Service Establishes A *Prima Facie* Case Of Sufficiency Of Service

When a defendant moves to dismiss under Rule 12(b)(5) for inadequate service of process, the burden is on defendant to prove that service was inadequate. *Bally Export Corp. v. Balicar, Ltd.*, 804 F.2d 398, 404 (7th Cir. 1986) (affirming defendant's failure to meet its burden of proof that service was inadequate); *Quach v. Cross*, No. CV 03-09627 GAF, 2004 WL 2862285 (C.D. Cal. Dec. 3, 2004) (holding that defendants failed to carry their burden of proof that service of process was inadequate). Where a motion to dismiss under Rule 12(b)(5) is decided without an evidentiary hearing, Plaintiff need only "make a *prima facie* case of proper service in order to survive the motion." *Power Integrations, Inc.*, 2004 WL 2806168, at *1 (quoting *U.S. v. Ziegler Bolt and Parts Co.*, 111 F.3d 878, 880 (Fed. Cir. 1997)).

After Plaintiff meets its burden of offering *prima facie* evidence regarding the "validity of service by producing the process server's return of service, ... the burden shifts to [defendant] to bring forth sufficient evidence to rebut the propriety of the service." *Hong-Ming Lu*, 2005 WL 807048, at *4.

## IV. ANALYSIS

### A. Fujitsu Effected Proper Service Of Process By Hand

#### 1. Fujitsu Complied with the State Department's Guidance

As discussed above, the State Department provides that "[s]ervice of process in Taiwan can be effected ... by agent, generally a local attorney ... ." (Holm Decl. ¶ 13; *id.* Ex. K). If enforcement of a judgment is anticipated, the State Department suggests that service also be effected pursuant to a Letter Rogatory. This is precisely the course Fujitsu has followed. (As discussed further below, the Court has already executed a Letter Rogatory and that procedure is well underway).

In addition to complying with State Department guidance, Fujitsu's service upon Nanya was consistent with the laws of Taiwan. Article 131 of the Taiwan Code of Civil Procedure states that "[i]n an action regarding a business, service may be effected upon the manager," and Article 137 states that "[w]hen the person to be served cannot be found in his/her … office, or place of business, service may be effectuated by leaving the paper with his/her … employee of suitable age and discretion." (Lee Decl. Ex. A).

Thus, Fujitsu's service by hand on an employee of Nanya was sufficient to commence this litigation.

Contrary to the unfounded assertions in Nanya's motion to dismiss, Fujitsu did not simply drop off a Summons and Complaint at Nanya's offices in Taiwan, or leave the documents on a table. Instead, Fujitsu precisely followed the approved and well accepted procedures for service under Rule 4(f)(2)(A) and Articles 131 and 137 of the Taiwan Code. Mr. Hsu asked to see the manager of Nanya's legal department and was told by Nanya's receptionist that the manager was unavailable. (Hsu Decl. ¶ 6). The receptionist, who was of suitable age and discretion, agreed to accept the Summons and Complaint and deliver them to the legal department of Nanya. (Hsu Decl. ¶¶ 7, 8.)

Fujitsu filed with the Court a Return of Service as well as a revised Return of Service, which establish that service by hand was effected on Nanya on November 3, 2006, and constitute *prima facie* evidence that service was proper. *Bally Export Corp.*, 804 F.2d at 404. The burden is on Nanya to show that service was not effective, and Nanya has failed to meet that burden in its motion to dismiss. *Hong-Ming Lu*, 2005 WL 807048, at *4.

2.  **Nanya's Arguments Are Meritless**

Nanya does not dispute that the State Department guidance provides that service by hand is sufficient to commence litigation in the United States, even if a Letter Rogatory is recommended to facilitate enforcement in Taiwan. Instead, Nanya relies on *Brockmeyer* as

support for its argument that Fujitsu's service of Nanya was ineffective because it failed to comply with the rules for service in Taiwan. (Motion at 9, n. 40); *Brockmeyer v. May*, 383 F.3d 798, 802 (9th Cir. 2004). Nanya also argues that under Article 123 of the Taiwan Code, service must be administered by the court clerk on his/her own authority, and that an execution officer or post office delegate should effectuate service.

However, *Brockmeyer* agreed that Rule 4(f)(2)(A) supports personal service by hand. 383 F.3d at 806 ("[C]ourts have applied Rule 4(f)(2)(A) to approve personal service carried out in accordance with foreign law.") Moreover, the preface of Article 123 says: "Except as otherwise provided." Such exception is found in Article 131, which permits service upon a corporation by service upon a manager, as discussed above. Accordingly, there are a number of cases where U.S. courts have found a plaintiff's direct service by hand to be proper on a Taiwan defendant. *Hong-Ming Lu*, 2005 WL 807048, at *4-5 (finding hand service to be valid on Taiwan individual); *Taylor Made Golf Co., Inc.*, 175 F.R.D. at 661 (noting hand service is valid on Taiwan corporation); *Cosmetech Int'l, LLC*, 943 F.Supp. at 316 (finding hand service to be valid on Taiwan corporation.). Of course, it is also proper under Article 123 for a court clerk to effectuate service by mail, as Fujitsu has done under Fed. R. Civ. P. 4(f)(2)(C)(ii), in its "belt and suspenders" approach.

Nanya relies on *Alcaraz Martinez v. White*, No. C 06-01595 CRB, 2006 WL 1530111 (N.D. Cal. June 2, 2006) to argue that service left in a reception area is improper. In *Alcaraz*, service left in the reception area of a Mexican Jail was held ineffective on a prisoner. Nanya is not a prisoner in a Mexican Jail and has control over its own receptionists.

Nanya also relies on *SVC-Napa, L.P. v. Strategy Resort Financing, Inc.*, No. C 06-03561 SI, 2006 WL 2374718 (N.D. Cal. Aug. 16, 2006). Nanya fails to explain how *SVC-Napa* is relevant at all. In *SVC-Napa*, a service attempt on a Bermuda company was held ineffective where a complaint was sent by registered mail to individuals domiciled in the United

States who did not have authority to accept service of process. Here, however, Fujitsu served Nanya at its office in Taiwan; Fujitsu did not serve some unauthorized individual in the United States as in *SVC-Napa*.

Nanya also submits a declaration from its attorney, Mr. Alfonso Chan. In paragraph 2 of his declaration, Mr. Chan claims to be an adjunct professor teaching comparative law. Apparently he is teaching a 2-credit course in the Spring that relates to doing business in China. It is unclear how much, if any, of the course will focus on Taiwanese law. Mr. Chan also vaguely states that his "law practice includes matters involving the laws of [Taiwan]." Most of the senior lawyers in this case can make the same claim. With due respect, none of these facts suggest that Mr. Chan is qualified to practice Taiwanese law or to make a submission in the nature of an expert declaration on which this Court can rely in matters relating to Taiwanese law.

In paragraph 4 of his declaration, Mr. Chan refers to a hearsay communication with an unnamed Taiwanese "counterpart" to support his view of Taiwanese law. Mr. Chan does not provide the name, affiliation, or qualifications of this so-called counterpart. There is no way to know what was actually said by this counterpart, whether Mr. Chan's paragraph 4 accurately reflects what was said, or whether Mr. Chan added to or omitted from what was said. For example, Mr. Chan attributes one statement in the beginning of paragraph 4 of his declaration to this counterpart, but it is unclear whether Mr. Chan also attributes the subsequent statements in paragraph 4 to this counterpart. While Mr. Chan is clearly trying to leave that impression, it is difficult to understand how a qualified Taiwanese lawyer could have failed to even mention Article 131 of the Taiwan Code of Civil Procedure, which refers to service upon the manager of a business but which Mr. Chan entirely failed to mention in his declaration. Interestingly, although Articles 123 to 153-1 of the Taiwan Code of Civil Procedure address Service of Process, Article 131 was omitted from the Chan attorney declaration. In view of Mr. Chan's failure to substantiate his own qualifications, in view of the vague, hearsay nature of his

statements, and in view of his failure to address the most relevant provisions of Taiwanese law, the Court should disregard his declaration entirely. On the other hand, the Court can securely rely on the plain language of Taiwan Code of Civil Procedure, as explained in the declaration of Victor S.C. Lee, a highly regarded Taiwanese lawyer with years of experience in Taiwanese civil legal practice, and its application in the courts of Taiwan.

Finally, in its motion to dismiss, Nanya does not argue or even suggest that it did not get the copies of the Summons and Complaint that were handed to its receptionist. Therefore, because it is clear that Fujitsu properly served the Summons and Complaint by hand, and Nanya does not contend it failed to receive them, there is no basis for the Court to dismiss the complaint or quash service.

Accordingly, the Court should deny Nanya's Motion to Dismiss for insufficient service of process and the alternative Motion to Quash.

### B. Fujitsu Also Effected Proper Service By International Mail

In addition to proper service of process by hand as discussed above, Fujitsu also properly served Nanya by international mail. Rule 4(f)(2)(C)(ii) provides for "any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the party to be served ... ." as long as it is not prohibited under Taiwan law. Fed. R. Civ. P. 4(f)(2)(C)(ii). Taiwan law does not prohibit such service of process by mail. (Lee Decl. ¶ 10) *See also Power Integrations, Inc.*, 2004 WL 2806168, at *3; *Trueposition, Inc.*, 2006 WL 1686635, at *5; *Emery*, 2001 WL 951579, at *2. Accordingly, service under Rule 4(f)(2)(C)(ii) is permitted on a Taiwanese corporation. *See supra* section III.C at 8.

Fujitsu's service of the Summons and Complaint on Nanya by international mail was dispatched by the Clerk of the Court under Rule 4(f)(2)(C)(ii). The United States Postal Service tracking service shows that package was delivered in Taiwan on December 5, 2006. (Holm Decl. ¶ 10; *id.* Ex H). Accordingly, Fujitsu's service on Nanya by mail dispatched by the

13   Plaintiffs' Opposition To Defendant's Motion To Dismiss For
Insufficient Service Of Process Or Alternatively To Quash
Service Of Process 06-cv-06613 (CW)

Clerk of the Court was effective December 5, 2006 and renders Nanya's motion to dismiss or quash entirely moot.

### C. In The Event The Court Finds That Nanya Has Not Yet Been Properly Served, It Should Quash Service Rather Than Dismiss The Complaint

As indicated above, Fujitsu clearly perfected service on Nanya with its initial service by hand on November 3, 2006, and then again by mail on December 5, 2006. However, in the unlikely event that the Court finds that service is not yet complete, then the appropriate remedy is to quash service rather than dismiss the complaint. This would allow the additional Letter Rogatory service that is already in progress to be completed. Completion of the Letter Rogatory process is expected in due course because this Court already executed the Letter Rogatory and on January 3, 2007, it was forwarded to the Department of State for processing and submittal to the appropriate officials in Taiwan. Fujitsu is pursuing such further service to facilitate enforcement of a monetary judgment against Nanya in this action by a Taiwanese Court. Service by Letter Rogatory is indisputably proper: Nanya admitted as much in its own Motion. (Motion at 7, lines 3-6). Accordingly, in the unlikely event that the Court must decide between dismissing the complaint and quashing service, the preferred course is to quash service.

### D. Nanya Does Not Challenge Personal Jurisdiction

Nanya suggests in passing at page 2 of its Motion that because service of process was allegedly insufficient, there was a "resultant lack of personal jurisdiction." Nanya does not in fact challenge personal jurisdiction, nor does it deny that its contacts with the Northern District of California through Nanya USA are substantial, continuous and systematic. The only issue substantively raised by Nanya's motion is its challenge to the sufficiency of service.

## V. NANYA USA IS IN DEFAULT

Nanya USA is currently in default for its continuing failure to timely file an answer. Nanya USA's answer was due on November 21 and that deadline was not tolled by either of the pending motions. The motion to dismiss or quash for insufficient service (Dkt. No.

14) does not even relate to Nanya USA -- it only relates to Nanya, the *Taiwanese* corporation. And the motion to dismiss, transfer or stay (Dkt. No. 18) was not a 12(b) motion but a first-to-file motion. *See* Fed. R. Civ. P. 12(b). Such a motion is "independent of Rule 12(b)." *Daugherty v. Popick*, 89 F.R.D. 642, 644 (S.D.N.Y. 1981). Although that motion mentions Rule 12(b)(2) (personal jurisdiction), Rule 12(b)(5) (service of process) and venue in passing at page 2, it does not raise those challenges nor could it with respect to Nanya USA, which is a California corporation that was personally served in California. Convenience is also mentioned in passing, but that too is not a 12(b) motion. The superficial mention of Rule 12 on page 2 simply did not convert the motion into one that tolled Nanya USA's deadline to file an answer. Nanya USA's procedural games are inappropriate and it would not be inappropriate to enter a default or other sanction against it.

## VI. CONCLUSION

For the foregoing reasons, the Court should deny Nanya's Motion to dismiss for insufficient service of process and also deny Nanya's alternative Motion to quash.

Respectfully submitted,

Dated: January 12, 2007   By: _____
Milbank, Tweed, Hadley & McCloy LLP
Gregory Evans (State Bar No. 147623)
Chris L. Holm (Pro Hac Vice)
601 South Figueroa Street, 30th Floor
Los Angeles, California 90017
Telephone: (213) 892-4000
Facsimile: (213) 629-5063

Milbank, Tweed, Hadley & McCloy LLP
Christopher E. Chalsen (Pro Hac Vice)
Michael M. Murray (Pro Hac Vice)
Lawrence T. Kass (Pro Hac Vice)
Frank A. Bruno (Pro Hac Vice)
1 Chase Manhattan Plaza
New York, NY 10005
Telephone:(212) 530-5000
Facsimile: (212) 530-5219

Attorneys for Plaintiffs
FUJITSU LIMITED and
FUJITSU MICROELECTRONICS AMERICA, INC.

NY2# 4723686